THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. MAGGIE GREEN.

No. 9168.

1. SPECIAL QUESTIONS — *in answering, jury need not follow any witness but may deduce truth from entire testimony.* In answering special questions, the jury need not necessarily accept the testimony of any single witness, but may deduce the truth from the statements of all the witnesses; and on the circumstances related by all of them, may sometimes properly find that all the facts have not been accurately stated by any one witness.

2. ———— *above rule applied in this case and judgment affirmed.* G. was engaged as an employe of the defendant in an ash-pit cleaning an engine. When the engine was moved off, his head was caught and crushed between a bolt-head protruding from the heel of the pilot and a plate on the end wall of the pit. One witness for the plaintiff testified that he was first struck by the shaker-bar, and another, by the links under the engine. The jury found that he was first struck by the ash-pan, though no witness so testified in terms. It was shown by other testimony that the shaker-bar on this particular engine was inside the ash-pan, though on some other engines the shaker-bars were outside. *Held,* that the jury were warranted on consideration of all the testimony in the case, in finding that the ash-pan was the first thing that struck G., and knocked him against the wall of the pit.

*Error from Sedgwick District Court.*
*Hon. C. Reed, Judge.*

AFFIRMED.                    OPINION FILED JANUARY 8, 1897.

*A. A. Hurd* and *Stambaugh & Hurd,* for plaintiff in error.

*J. D. Houston* and *J. F. Craig,* for defendant in error.

ALLEN, J.    W. H. Green, who was the husband of the plaintiff, was employed by the Railroad Company to clean the fire-boxes and other parts of its engines at Arkansas City. On the 16th of March, 1890, for the purpose of cleaning an engine, he went into a pit

30 feet long and 3½ feet deep, dug between the rails of one of the company's tracks. He had nearly completed his work and was standing between the end of the ash-pan of the engine and the south end of the pit, when the engine was backed off the pit and his head was crushed between the end of a bolt that protruded from the heel of the pilot and an iron plate on the top of the south wall of the pit, causing his death. This action was brought by his widow to recover damages for causing the death of her husband. A general verdict for $3,000 was rendered in her favor, and judgment entered thereon. The Railroad Company seeks a reversal of this judgment. The first error assigned is with reference to the exclusion of certain testimony, but is not of sufficient importance to merit a statement in the opinion. The principal contention is on the merits of the case. A demurrer to the evidence was overruled. An instruction to find for the defendant was refused, and the Court overruled the defendant's motion for judgment on the special findings. Complaint is made of all these rulings. There was evidence showing that the engine was started, without notice to Green, before he had finished his work. The circumstances testified to by plaintiff's witnesses indicate that the first part of the engine that struck Green was the ash-pan. It is insisted that the testimony of the plaintiff's own witnesses is opposed to the finding of the jury to that effect.

Counsel calls attention to the fact that J. C. Smoykefer testified that the links were the first thing that struck Green, and that Cliff Williams testified that it was the shaker-bar. The witness Jacks does not appear to have seen Green until he was struck by the heel of the pilot. Witnesses for the defendant testi-

fied that on this particular engine the shaker-bar was
inside the ash-pan so that it could not have struck
the deceased.    In this state of the evidence it is in-
sisted that the finding of the jury, that the ash-pan
was the first thing that struck Green, is contrary to
the evidence.    We do not find the direct statement of
any witness that he saw the ash-pan strike Green.
The testimony of Williams shows that Green was
standing up behind the ash-pan, fixing something
about the damper;  that the engine was suddenly
started; that no signal was given, and nothing was
said about starting; that the shaker-bar, which stuck
down back of the ash-pan, struck Green and knocked
him down, so that his head lay on top of the south
wall of the pit; that the ash-pan held him down, and
that a bolt on the under part of the pilot caught his
ear and crushed his head against an iron piece that
runs across the top of the end of the pit; that after
he was first knocked down, Green kicked as though
there was something the matter with his foot; and
that there were two pieces of cordwood and a board
in the bottom of the pit.    Williams did not appear
to be positive that it was the shaker-bar that first
struck Green.    If the main facts testified to by wit-
nesses for the plaintiff were accepted by the jury, and
if they also believed from all the testimony in the
case that the shaker-bar of this engine was inside
the ash-pan so that it could not have hit Green,
the most reasonable conclusion is that it was the
end of the aph-pan that hit him, and that Wil-
liams was mistaken in that particular, though truth-
ful as to the essential facts.    It would make very
little difference whether it was the shaker-bar pro-
truding behind the ash-pan, or the ash-pan itself, that
first struck him.    The effect would probably be the

same in either case.   J. E. Drennan testified, as a witness for the defendant, that he was the hostler in charge of the engines at that round-house; that he was standing by the engine directing Green with reference to his work; that he told him to take the props out of the back damper; that Green went under the ash-pan to the back end of it and took them out; that he then told him to stoop down good and low; that Green did stoop down, and that when he saw that he was down he said to Downing, who was standing right there by him waiting, "All right, get up and back her up"; that Downing then stepped on the engine and started to back up slowly; that he then started away and walked probably 30 feet, when he heard some one "holler," and ran back and saw that Green was hurt. Other witnesses for the defendant testified that the bell was rung, and that the engine was moved off slowly.   The jury evidently did not believe the witnesses for the defendant.   There was an irreconcilable conflict between their testimony and that of the witnesses for the plaintiff.   It is not our province to say that they were wrong, and that they should have believed the statements of the defendant's witnesses. If the statements of the witness Drennan are true, it seems quite strange that Green should have been killed.   When he had once assumed a position of perfect safety, with knowledge that the engine was moving, it does not seem probable that he would raise up to permit the pilot to catch his head.   On the other hand, if the engine was started without warning, it is quite easy to understand how he might have been knocked down by the ash-pan, or any other protruding portion of the engine, and being thrown against the wall, and rendered partially, or totally insensible by the shock, that he should not have been able to

get into a position of safety before being struck by the bolt in the pilot which caused his death.

Where the testimony of the witnesses is conflicting, it is the province of the jury to extract the truth from all of it as best they can ; and, in reaching a conclusion, they have a right to exercise their judgment on the reasonableness and probability of the statements made by the opposing witnesses.

The plaintiff in error presented a long list of special questions to be answered by the jury, and most of them were submitted and answered.    Numerous criticisms are made in the brief on the various findings, and, it is urged that some of them are not supported by the evidence ; that there are contradictory findings, and that they conflict with the general verdict.    We find nothing substantial in any of these claims. While there was evidence warranting different findings from those returned by the jury, there was also evidence to uphold the findings actually made.    We perceive no error in the record.

The judgment is affirmed.

All the Justices concurring.